FILED

2010 Nov-23  PM 04:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEVA BURCHFIELD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:09-cv-01215-AKK** |
| **CITY OF BIRMINGHAM, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deva Burchfield ("Plaintiff") brings this action against the City of Birmingham, Chief of Police A.C. Roper, Officer Thomas Crow, Officer Judith McKinstry[1], Officer Lekeidrick English, Officer Doris Augustin, Officer Cynthia Morrow, Officer Rodney Powrzanas, and Officer Shirley Ray.  Doc. 1.  Plaintiff sues each officer individually and in his or her official capacity.  *Id.*  Defendants now move for summary judgment on all claims.  Doc. 25.  For the reasons set forth below, the motion is GRANTED in part and DENIED in part.  The trial set for December 6, 2010 is continued.  The parties are directed instead to file a joint proposed pretrial order, consistent with the instructions set forth herein, by

---

[1]Officer McKinstry's name appears to be misspelled as "McKinistry" in the complaint. The court will refer to McKinstry by the correct spelling of her name.

December 10, 2010.

## I.     Summary Judgment Standard

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress*

2

& *Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all

justifiable inferences must be drawn in the non-moving party's favor).  However,

"mere conclusions and unsupported factual allegations are legally insufficient to

defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th

Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,

1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the

opposing party's position will not suffice; there must be enough of a showing that

the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573,

1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.     Background

### A.     *Procedural History*

To understand the context in which this motion for summary judgment

arises, it is necessary for the court to provide some explanation of this case's

procedural history.  Plaintiff filed her complaint on June 16, 2009, and, after

Plaintiff sought an entry of default, Defendants answered on September 17, 2009.

Doc. 1; Docs. 6-9.  On September 23, 2009, Judge Johnson[2] set the case for trial

for June 1, 2010.  Doc. 10.  The Scheduling Order further provided that the parties

were to complete all discovery by April 16, 2010, and file any dispositive motions

---

[2]This case was randomly reassigned to the undersigned on January 7, 2010.  Doc. 13.

by May 3, 2010.  Doc. 12.  The parties did not file dispositive motions, and the court set a pretrial conference for May 17, 2010.  Doc. 18.  At the pretrial conference, the parties informed the court that they had not taken any discovery in the case.  Concluding that setting such an ill-prepared case for trial would be a mistake, the court extended the discovery and dispositive motion deadlines to August 31, 2010.  Doc. 19.

On August 31, Defendants filed their motion for summary judgment along with a motion to compel, which stated that Plaintiff had failed to participate in discovery.  Doc. 23; Doc. 25.  On September 10, Plaintiff moved for a stay of all proceedings pending the outcome of her related criminal appeal.  Doc. 27.  The court ultimately denied the stay and ordered Plaintiff to participate in discovery, including her own deposition.  Doc. 28; Doc. 37.

The submissions on the motion for summary judgment reflect the parties' failure to adequately participate in discovery and prepare their respective cases.  Although the court is sympathetic to the pressure under which counsel must often work, their failure to prepare their respective cases places the court at an informational disadvantage and prejudices clients that cannot adequately articulate an evidentiary basis for their claims or defenses.  Therefore, while the court addresses the issues and claims actually raised in the summary judgment briefing,

4

it will not create arguments for the parties. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments . . . ." (quotations and citations omitted)); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n. 13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument").[3]

## B.    *Factual Background*

The court resolves all factual disputes in the record, of which there are many, in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence).

---

[3]Defendants complain that "Plaintiff's complaint is disorganized," (doc. 26 at 21), an observation with which the court strongly agrees. The court would further add that the complaint is a typical shot-gun pleading, which parrots in nearly identical language other complaints filed in this district. *See Anthony Warren v. City of Birmingham*, No. 9-cv-1025-RRA, Doc. 1 (N.D. Ala. May 26, 2009). However, Defendants should have moved to dismiss certain parties and claims long before this case reached the summary judgment stage. Not only did Defendants fail to do so, but Defendants further failed to address each count in its motion for summary judgment. Despite the fact that the court strongly suspects that several of Plaintiff's claims lack merit, as stated above, the court will not argue Defendants' case for them.

*1.    Initial Arrest*

On June 16, 2007, Plaintiff, who was celebrating her birthday, attended the

City Stages music festival in Birmingham, Alabama.  Doc. 44-1 at 1 ¶ 3.  Plaintiff

and her friends obtained a VIP pass for the Miller Light stage.  *Id*.  Birmingham

Police Officers Thomas Crow ("Crow") and Rodney Powrzanas ("Powrzanas")

were assigned to patrol at the Miller Light stage.  Doc. 26 at 30, 34-35.  Plaintiff,

who was of legal drinking age, had been consuming alcohol.  *Id.* at 31, 35.

At some point in the evening, Plaintiff attempted to order a mixed drink

from a server, who declined to serve her.  Doc. 44-1 at 2 ¶ 10.  Plaintiff states in

her affidavit that she "was somewhat embarrassed, and [she] complained to the

serving staff, but did not act in a rude, boisterous, irate or belligerent manner."  *Id*.

The VIP staff then approached Crow and Powrzanas, informed them that they had

refused to serve Plaintiff any more alcohol and that they wanted her to leave the

tent.[4]  Doc. 44-2 at 2 (Tr. p. 157); Doc. 44-3 at 1 (Tr. p. 222).  Crow and

Powrzanas then approached Plaintiff, who was watching the performing band, and

immediately informed her that she was under arrest.  Doc. 44-1 at 2 ¶¶ 12-14.

Plaintiff states that she tried to present her driver's license to prove that she was

---

[4]Plaintiff asserts that these statements are inadmissible hearsay.  Doc. 38 at 2-4.  The court disagrees - these statements are not hearsay because they could be offered for their effect on the hearer (i.e. the officers), rather than for the truth of the matter asserted.

6

not underage, but Crow and Powrzanas took her purse, handcuffed her, and refused to listen to her explanation. *Id.* at 3 ¶ 16. Crow and Powrzanas then each tightly grasped one of Plaintiff's arms and began marching her out of the VIP area. *Id.* ¶ 19. Due to the fact that Plaintiff was crying, she was wearing heels, and the officers were moving her forward quickly, she lost her balance and began to stumble. *Id.* at 3-4 ¶¶ 20-21. Plaintiff then states that the officers "forcefully threw [her] down onto the pavement," "attempted to pin [her] facedown," and "struck [her] several times in [her] back and arms." *Id.* at 4 ¶¶ 21-22. Feeling like she was unable to breathe with the officers on top of her, Plaintiff bit Crow on his right leg. *Id.* ¶¶ 22-23. Crow pulled away, while Powrzanas kept her pinned to the ground until the transport unit arrived to take her to the command post. *Id.* ¶¶ 24-25. During this time, Plaintiff continued to use profanity and "cause alarm to the public."[5] Doc. 26 at 31, 35. The transport unit then took her to Cooper Green Hospital, where she refused medical treatment. Doc. 44-1 at 24.

> 2.   *Booking at the Birmingham Jail*

Plaintiff was then transported to the Birmingham City Jail for booking. Doc. 26 at 39. Officers Judith McKinstry ("McKinstry") and Doris Augustin

---

[5]Disputing this fact, Plaintiff cites to her affidavit. *See* Doc. 38 at 3 ¶ 16. Her affidavit, however, does not explicitly contradict the officers' account of her profanity.

("Augustin") were working at the booking station.  Doc. 44-10 at 164, 166 (Tr. pp.

354, 356).  McKinstry claims that Plaintiff kicked her leg.  Doc. 26 at 39.  Plaintiff

denies kicking McKinstry, but admits that McKinstry filed an incident report with

the Birmingham Police Department as a victim of assault.  *Id*.  Plaintiff, who was

still handcuffed, was placed in leg irons.  Doc. 44-1 at 5 ¶ 28.  Plaintiff notes that,

while in the booking area, an officer pointed a Taser gun at her, after which she

"became hysterical."  *Id*. at 4 ¶ 26.  Officer Lekeidrick English ("English")

testified at Plaintiff's criminal trial that he videotaped Plaintiff with the Taser gun.

Doc. 45-8 at 6 (Tr. p. 301).  The video, which was played at Plaintiff's criminal

trial, recorded her cursing at the officers present.[6]  Doc. 44-10 at 77-78 (Tr. pp.

267-68).

     The officers placed her in the solitary confinement cell.  Doc. 44-1 at 5 ¶ 28.

When she refused to walk, McKinstry and Augustin carried Plaintiff up two flights

of stairs.  Doc. 44-4 at 1 (Tr. p. 254).  Plaintiff further states in her affidavit that

McKinstry and Augustin "assaulted [her] by kicking [her] and dragging [her] by

[her] wrist restraints," while taking her to the solitary confinement cell.  Doc. 44-1

at 5 ¶ 29.  Because McKinstry brought a second charge of felony assault against

---

[6]Although not mentioned in her affidavit, Plaintiff admitted in her complaint that she
"verbally insulted" some of the officers at the Birmingham City Jail.  Doc. 1 at 5 ¶ 27.

her, Plaintiff was held in jail for more than forty-eight hours. *Id.* ¶ 31.

During her arrest and in the course of being taken to the solitary confinement cell, Plaintiff states that she ruptured her Achilles tendons in both ankles, broke a bone in one wrist, and suffered "multiple bruises, cuts and scrapes." *Id.* ¶ 32; Doc. 44-1 at 7-20.

### 3. *Police Training*

Crow, Powrzanas, and McKinstry state in their affidavits that they "completed a lengthy training course at the Birmingham Police Academy" and were certified as police (Crow and Powrzanas) and correctional (McKinstry) officers "by the Alabama Peace Officer Standards and Training Commission." Doc. 26 at 29-30, 33-34, 38.  Crow and Powrzanas state that their training included "proper arrest procedures, how to deal with citizens and suspects, the law and ordinances police officers enforce, the rules and procedures of the Birmingham Police Department, physical training, training in the apprehension of suspects, the appropriate use of firearms and other potentially lethal weapons." *Id.* at 30, 34.  McKinstry states that her courses "at the Academy included but were not limited to proper booking procedures, how to deal with citizens and suspects, the law and ordinances correctional officers enforce, the rules and procedures of the Birmingham Police Department, physical training, training in the detainment

9

of suspects, the appropriate use of mace and other potentially lethal weapons

(tasers)." *Id.* at 38.  Crow, Powrzanas, and McKinstry all received training on

detaining suspects through the use of non-lethal force and on using a "force

continuum." *Id.* at 30, 34, 38.  Furthermore, they continued to receive in-service

training after becoming sworn officers.  *Id*.

## III.   Analysis

Plaintiff's complaint contains ten counts: Count I, brought pursuant to 42

U.S.C. § 1983, alleges that Defendant Officers violated the Fourth Amendment by

using excessive force in arresting Plaintiff; Count II alleges that Defendant

Officers assaulted and battered Plaintiff; Count III, brought pursuant to 42 U.S.C.

§ 1983, alleges that Defendant Officers failed to intervene during the wrongful

assault and battery; Count IV alleges that City of Birmingham ("the City") and

Chief A.C. Roper ("Roper") negligently failed to supervise the activities of the

officers; Count V alleges that the City, Roper, and "others"[7] failed to adequately

train and supervise the other Defendants; Count VI alleges that the City violated

Plaintiff's Fourth and Fourteenth Amendment rights by conducting an

unwarranted arrest and detention; Count VII alleges that the City, Roper, and

---

[7]The court limits its analysis to Defendants actually named in the complaint; unspecified "others" is insufficient to place Defendants or this court on notice as to whom Plaintiff alleges harmed her.

"others" denied Plaintiff due process "by concealing their behavior and tampering with evidence pertinent to her criminal defense" and that all Defendants violated her right to be free from cruel and unusual punishment under the Eighth Amendment; Count VIII alleges that Defendant Officers took part in a civil conspiracy "to suppress the unwarranted and unlawful conduct of Defendant Officers by tampering with evidence, manipulating and/or fabricating charges to delay Plaintiff's release, and proffering same to be used in a judicial tribunal;" Count IX alleges the City, Roper, and "others" have created an atmosphere of deliberate indifference to violations of persons' rights, privileges, and immunities; Count XI[8] alleges that Defendant Officers committed the tort of outrage when they "savagely and brutally beat" Plaintiff and prevented her from receiving proper medical treatment.  Doc. 1.  The court will first address Plaintiff's federal claims before turning briefly to her state law claims.

**A.    Federal Claims**

The court first addresses the City's liability under the federal claims alleged against it, which, as the court reads Plaintiff's complaint, are Counts VI, VII, and IX.

*1.    Municipal Liability*

---

[8]Plaintiff's complaint does not contain a Count X.

The starting point for the court's analysis is 42 U.S.C. § 1983, which creates a cause of action against persons who violate the Constitution and federal laws while acting under state government authority.   Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

Section 1983 applies to municipalities, but municipalities cannot be held liable on a *respondeat superior* theory.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).  In other words, a municipality is responsible for its own acts but not the acts of its employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986).  Thus, a municipality is liable under section 1983 only "when execution of a government's policy or custom . . . inflicts the injury."  *Monell*, 436 U.S. at 694. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (citations and quotation marks omitted).  "A custom is a practice that is so settled and permanent that it takes on

12

the force of law." *Id*. (citations and quotation marks omitted). "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations and quotation marks omitted).

Municipal liability may also be based on a claim of inadequate training and supervision when the failure to train and supervise "evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train and supervise] can properly be thought of as a city 'policy or custom' that is actionable under § 1983." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489-90 (11th Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). A municipality is not automatically liable even if it failed to train or inadequately trained officers who then violated a plaintiff's constitutional rights. *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Instead, a plaintiff must show that "the municipality inadequately train[ed] or supervise[d] its employees, this failure to train or supervise is a city policy, and that city policy cause[d] the employees to violate a citizen's constitutional rights." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

"Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further

explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants."  *Gold*, 151 F.3d at 1350.  To show "deliberate indifference," a plaintiff must present evidence that the municipality was on notice of the need for proper training in an area and chose not to take any action.  *Id.*  "A city may be put on notice in two ways.  First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent. . . .  Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious."  *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (internal citations omitted).  Against this backdrop, the court now addresses the federal claims asserted against the City.

  *a. Count VI*

   Count VI alleges that "Defendant City of Birmingham, through the initiating officer, conducted an unlawful and unwarranted arrest and detention of Plaintiff in violation of her constitutional right to be free from unlawful search and seizure.  Plaintiff was not engaged in any unlawful behavior, and Defendants [sic] failure to verify of [sic] check Plaintiff's age was unreasonable."  Doc. 1 at 8 ¶ 51.  As set

forth above, municipalities may not be liable under a theory of *respondeat superior*. *Monell*, 436 U.S. at 690-91; *see also Harvey v. City of Stuart*, 296 F. App'x 824, 826 (11th Cir. 2008) (per curiam) (dismissing claims against the city for false arrest, excessive force, and due process and equal protections violations committed by individual officers). Here, Plaintiff specifically alleges that the City of Birmingham, "through the initiating officer," is liable for her alleged unwarranted arrest and detention. In short, Plaintiff's sole basis for holding the City of Birmingham liable under this count is the allegation that one or more of the individual officer Defendants acted unlawfully. Because liability does not attach to municipalities for the acts of its employees rather than its own acts, Count VI fails as a matter of law and is therefore dismissed.[9]

    *b.*    *Count VII*

Count VII appears to incorporate two distinct allegations: (1) that the City and Roper denied Plaintiff due process by concealing and tampering with evidence and interfering with the administration of justice, and (2) that Defendant Officers and the City of Birmingham violated her Eighth Amendment right to be free from cruel and usual punishment while detained. Doc. 1 at 9 ¶¶ 54-55. As the

---

[9]The court notes that Plaintiff also failed to present evidence of, or even identify, a policy or custom that caused a Fourth Amendment violation.

allegations raise separate and distinct issues, the court addresses them separately.

### 1.    *Eighth Amendment Claim*

The claim for the Eighth Amendment violation states: "The Defendant Officers and the City of Birmingham violated Plaintiff's right to be free from 'cruel' and 'unusual punishments' under the Eighth Amendment, by sadistically and maliciously beating and kicking Plaintiff while she was detained."  *Id.* ¶ 55.

As an initial matter, the court notes that, as a pre-trial detainee, Plaintiff's "rights exist under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment."  *McDowell*, 392 F.3d at 1290 n. 8 (citation omitted). "Nonetheless, [Plaintiff's] claims are subject to the same Eighth Amendment scrutiny as if they had been brought . . . under the Eighth Amendment."  *Id.* (citations omitted).  Even proceeding under a Fourteenth Amendment analysis, the City, of course, cannot "beat" and "kick" anyone – only its employees can.  As with Count VI, Plaintiff cannot maintain an action against the City on a theory of *respondeat superior*.  Therefore, this portion of Count VII, as alleged against the City, fails as a matter of law.[10]

### 2.    *Due Process Claim*

_____

[10]The court notes that Plaintiff also failed to present evidence of, or even identify, a policy or custom that caused a Fourteenth Amendment violation.

In Count VII, Plaintiff alleges that the City denied her due process by concealing and tampering with evidence and interfering with the administration of justice.  Plaintiff does not allege specifically what evidence Defendants concealed or tampered with, but Plaintiff's affidavit suggests that her argument is that she did not kick McKinstry.  Doc. 44-1 at 5 ¶ 31.  Nevertheless, Plaintiff fails to point to a policy or custom causing the violation of her due process rights.  Because the City cannot be held responsible under a *respondeat superior* theory for the actions of its officers, including McKinstry, this claim is dismissed as against the City.

  c. *Count IX - Deliberate Indifference*

Count IX alleges that the City evidences a deliberate indifference to its inhabitants by: "A. Failing to implement policies, procedures and practices regarding use of force that appropriately guide and monitor the actions of Birmingham Police Officers; B. Failing to train Birmingham Police Officers adequately to prevent the occurrence of misconduct; C. Failing to supervise Birmingham Police Officers adequately to prevent the occurrence of misconduct; D. Failing to implement policies and procedures whereby complaints and other allegations of misconduct are adequately received and investigated; E. Failing to adequately investigate incidences of use of excessive force; F. Failing to adjudicate or adequately review citizen complaints and incidents in which there

are uses of excessive force; and G. Failing to adequately discipline officers who engage in misconduct." Doc. 1 at 10 ¶ 61. Defendants presented affidavit evidence from Crow, Powranzanas, and McKinstry, which described the training they received, and how such training was designed to ensure the protection of constitutional rights. *See* Doc. 26 at 29-30, 33-34, 38. Defendants further state that Plaintiff "cannot describe or prove any policy or lack thereof which ties to a violation of her protected rights." *Id*. at 14. In response, Plaintiff neither argued nor presented evidence that would place the statements in the affidavits in dispute. Specifically Plaintiff failed to establish that the City of Birmingham was placed on notice of the need for proper training, supervision, or policies, and chose not to take action. *Gold*, 151 F.3d at 1350.

Without presenting evidence of a pattern of constitutional violations that the City failed to address, Plaintiff can only establish deliberate indifference "if the likelihood for constitutional violation is so high that the need for training would be obvious." *Lewis*, 561 F.3d at 1293 (internal citations omitted). In *Lewis*, however, the Eleventh Circuit emphasized that only "'a narrow range of circumstances'" rise to the "level of obviousness" required to put a municipality on notice that a violation of federal rights would be a "'highly predictable consequence' of a failure to provide adequate training." 561 F.3d at 1293

18

(quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409

(1997)).  The Eleventh Circuit then found that the hobble (a type of tie used to

immobilize a person in custody) did not carry such a high probability for

constitutional violations that a municipality's failure to train officers on its use

would lead to liability.  *Id*. (distinguishing hobbles from deadly firearms); *see also*

*Gold*, 151 F.3d at 1352 (finding contention that police officers were improperly

trained and/or supervised regarding the disorderly conduct statute and the proper

response to handcuff complaints was not "so obvious" as to support a finding of

deliberate indifference).  Therefore, even if Plaintiff's allegation of inadequate

training was supported by evidence, the training and policy omissions of which

she complains do not meet the Eleventh Circuit's obviousness test.  Summary

judgment is therefore granted on Plaintiff's deliberate indifference count.[11]

    2.    *Liability for Individual Officers on Federal Claims*[12]

---

[11]To the extent Count IV, which alleges negligent supervision against the City and Roper, and Count V, which alleges inadequate training against the City and Roper, attempt to state a claim under 42 U.S.C. § 1983, these claims are due to be dismissed against the City for the reasons stated above.  The parties did not address, however, whether Plaintiff may bring such claims under state law.

[12]Plaintiff sues each of the Officer Defendants in his or her official and individual capacities.  It is well-established that a § 1983 suit against officer in his or her official capacity is a suit is treated as a claim against the city.  *Hardy v. Town v. Hayneville*, 50 F. Supp. 2d 1176, 1184-85 (M.D. Ala. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  Therefore, Plaintiff's § 1983 claims against the individual Defendants in their official capacities are due to be dismissed.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (U.S. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*, 129 S. Ct. at 815.  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id*. (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

First, Defendants must establish that they were engaged in a discretionary duty during the event in question, which is not disputed in this case.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  The burden then shifts to Plaintiff to show that Defendants are not entitled to qualified immunity.  *Id*.  In *Saucier v. Katz*, the Supreme Court mandated a two-step sequence for addressing a claim of qualified immunity: (1) the court first decides whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right, and (2) the court then decides whether the right was "clearly established" at the time of the

alleged violation.  533 U.S. 194, 201 (2001).  In *Pearson*, however, the Court held that courts need not adhere to the *Saucier*'s rigid two-step inquiry, and courts could decide the second question without reaching the first.  129 S. Ct. at 818.

    *a.    Count I - Excessive Force*

Count I alleges that "Defendant Officers" used excessive force when arresting Plaintiff.  To begin, although the complaint does not specifically name individual officers with respect Count I, it is clear from the record and the parties' submissions that only Powrzanas and Crow participated in Plaintiff's arrest.  Therefore, this count is dismissed against all other officers named in the complaint and this section considers only the qualified immunity claims of those two officers.

Plaintiff makes two legally distinct excessive force arguments.  First, she argues that her arrest was unlawful and, therefore, any force was excessive.  Doc. 1 at 7 ¶ 35A; Doc. 38 at 19.  Second, she argues that the force used exceeded what was necessary under the circumstances.  Doc. 1 at 7 ¶ 35B-E; Doc. 38 at 17-19.  The former argument – that any use of force was excessive because her arrest was unlawful – "is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331 (11th Cir. 2006) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)).

"In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had arguable probable cause, that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Davis v. Williams*, 451 F.3d 759, 762-63 (11th Cir. 2006) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)) (citation and internal quotation marks omitted).

Defendants claim that "Crow and Powrzanas had more than probable cause to arrest the plaintiff based upon the totality of the actions observed by them," which, according to Defendants, included Plaintiff's attempts to hit and kick the officers and her nonresponsiveness to their commands.  Doc. 26 at 19-20; *see also* ALA. CODE 1975 § 15-10-3(a)(1) ("An officer may arrest a person without a warrant, on any day and at any time in any of the following instances: (1) If a public offense has been committed or a breach of the peace threatened *in the presence of* the officer." (emphasis added)).  Plaintiff, however, alleges that the officers simply came up to her as she was enjoying the concert and arrested her without any warning or explanation.  She further denies refusing their commands to leave the Miller Lite tent, throwing her shoe at them, using force, or otherwise resisting arrest.  Accepting her facts as true, the officers did not have "arguable

22

probable cause" to arrest Plaintiff.  The court cannot resolve the factual disputes without making credibility determinations, which are the province of the jury, not the court.

Plaintiff further argues that Defendants exceeded the amount of force required under the circumstances.  Excessive force claims arising in the context of an arrest invoke the guarantees of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394-95 (U.S. 1989).  "In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  *Hadley*, 526 F.3d at 1329 (citations omitted).  The Eleventh Circuit considers several factors to determine "whether an officer's use of force was objectively reasonable, including '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically.'" *Id.* (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).  "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley*, 526 F.3d at 1330 (denying qualified immunity to officer who allegedly punched plaintiff while he was handcuffed and not resisting); *see also Slicker*, 215 F.3d at 1233 (finding excessive force where officers kicked a handcuffed and non-

23

resisting defendant in the ribs and beat his head on the ground).

Plaintiff claims that, despite the fact that she was handcuffed and not resisting arrest, Crow and Powranzas "forcefully threw [her] down onto the pavement," "attempted to pin [her] facedown," and "struck [her] several times in [her] back and arms." Doc. 44-1 at 4 ¶¶ 21-22. If true – and that again is for the jury to determine, the facts establish a violation of a well-established constitutional right to be free from excessive force. The court therefore must deny qualified immunity to Crow and Powranzas on Count I for false arrest and excessive force.

> b.   *Count VII - Eighth Amendment*

Plaintiff alleges in Count VII that Defendants violated her "right to be free from 'cruel' and 'unusual punishments' under the Eighth Amendment by sadistically and maliciously beating and kicking Plaintiff while she was detained."[13] Doc. 1 at 9 ¶ 55. As noted above, as a pre-trial detainee, Plaintiff's "rights exist under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment." *McDowell*, 392 F.3d at 1290 n. 8 (citation omitted). "Nonetheless, [Plaintiff's] claims are subject to the same Eighth Amendment

---

[13]Count VII also alleges that Roper "and others" violated Plaintiff's due process rights by concealing and tampering with evidence pertinent to her criminal defense. Doc. 1 at 9 ¶ 54. Defendants, however, did not address this portion of Count VII.

scrutiny as if they had been brought . . . under the Eighth Amendment." *Id*.

(citations omitted); *see also Smith v. Vavoulis*, 373 F. App'x 965, 966 (11th Cir.

2010) (per curiam) (same). "To establish a claim for excessive force, a plaintiff

must establish both a subjective and objective component." *Smith*, 373 F. App'x

at 966. Subjectively, the plaintiff must prove that the defendant applied the force

"'maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting

*Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999)). Objectively, the

plaintiff must prove that the defendant used "a requisite amount of force" against

her. *Smith*, 373 F. App'x at 966. In *Smith*, the Eleventh Circuit denied qualified

immunity to officers that allegedly punched and kicked a handcuffed and shackled

pretrial detainee, who suffered knots on his head, cuts, and bruises. *Id.* at 966-67.

In this case, Plaintiff states in her affidavit that McKinstry and Augustin

"assaulted [her] by kicking [her] and dragging [her] by [her] wrist restraints,"

while she was being taken to the solitary confinement cell. Doc. 44-1 at 5 ¶ 29.

Furthermore, during her arrest and in the course of being taken to the solitary

confinement cell, Plaintiff states that she ruptured her Achilles tendons in both

ankles, broke a bone in one wrist, and suffered "multiple bruises, cuts and

scrapes." *Id*. ¶ 32; Doc. 44-1 at 7-20. Taking Plaintiff's statement as true, the

court must deny qualified immunity to Augustin and McKinstry for Plaintiff's

excessive force claim during her confinement in the City of Birmingham Jail. However, because Plaintiff's allegations and evidence establish that only these two Defendants could be held liable for this claim, this claim is dismissed as against all other Defendants.

## B.    State Claims

Defendants further states that "in the event the Court finds that she has alleged state law claims of false arrest, excessive force or negligence," (doc. 26 at 21), all Defendants are due immunity pursuant to ALA. CODE § 6-5-338(a) as they were performing discretionary functions.[14]   However, as the Supreme Court of Alabama has explained, "Peace officers are not entitled to absolute immunity under § 6-5-338(a); rather, immunity from tort liability under § 6-5-338(a) 'is withheld if an officer acts with willful or malicious intent or in bad faith.'"  *Ex parte City of Tuskegee*, 932 So. 2d 895, 906-07 (Ala. 2005) (quotation omitted). Because, as discussed above, there are disputed issues of material fact regarding Plaintiff's arrest and treatment at the City of Birmingham Jail, the court declines to award immunity under state law to Defendants.

## V.    Conclusion

---

[14]Although neither party attempted to identify precisely which counts contain state claims, the court considers those counts to be: Count II - Assault and Battery; Count IV - Negligent Supervision; Count V - Inadequate Training; and Count XI - Tort of Outrage.  Following the parties' briefing, the court confines its analysis to Count II - Assault and Battery.

In sum, summary judgment is GRANTED for (1) the City on Counts VI, VII, and IX; (2) all individual officers other than Crow and Powrzanas on Count I; (3) all individual officers other than McKinstry and Augustin on Plaintiff's Eighth Amendment claim contained with Count VII.  Summary judgment is DENIED as to all other counts, including those not addressed in Defendants' motion for summary judgment.

The court points out that despite the summary judgment briefing, this case is still not ready for trial because of the parties' failure to flesh out the various issues during discovery.  In particular, the court is concerned that, even at this late juncture, neither Defendants nor Plaintiff have made a reasonable effort to distill which counts pertain to which Defendants.  The court is especially concerned that the record on summary judgment contained very little evidence on the alleged violations by Roper, English,[15] Morrow, and Ray.  To this court, it seems fundamentally unfair that these Defendants may have to go to trial based on the mere fact that the complaint and summary judgment briefs lacked sufficient specificity to permit this court to grant them qualified immunity or that the parties have failed to conduct adequate discovery to allow these Defendants to know

---

[15]The court is aware that English allegedly video-taped Plaintiff with a Taser gun at the Birmingham City Jail.  However, neither the evidence nor the allegations of the complaint specify how this action may have violated Plaintiff's rights.

exactly what Plaintiff alleges so that they can mount an adequate defense.

Therefore, parties are hereby ORDERED to submit a joint proposed pretrial order

by **December 10, 2010**, following the attached instructions.  The parties should

pay careful attention to the instructions in Section 5, Statement of the Case.

Plaintiff is strongly encouraged to outline an adequate legal theory and provide

factual allegations for each claim she asserts against each remaining Defendant.

Alternatively, Plaintiff should voluntarily dismiss frivolous claims or parties

against whom she can present no evidence.  If Plaintiff does not voluntarily

dismiss such claims or parties, the court will favorably consider a motion for

attorney's fees by these individual Defendants in the event they prevail at trial.

This matter is set for a final pretrial conference at Noon on December 17, 2010,

and a trial on January 24, 2011.

DONE this 23rd day of November, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

PRETRIAL INSTRUCTIONS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

**BIRMINGHAM, ALABAMA**

This case is  set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure.  A conference-type hearing will be held in chambers in the Hugo Black Federal Courthouse in Birmingham, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions.  <u>Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel</u>.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating  workable procedures and deadlines for remaining discovery matters.  <u>In advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov)a proposed Pre-trial Order in WordPerfect format</u>, furnishing other counsel with a copy.  It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (www.alnd.uscourts.gov/Kallon/Kallonpage) to illustrate the format preferred by

29

the court and also to provide additional guidance and instructions.  Each order must, of course, be tailored to fit the circumstances of the individual case.

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike.  The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute.  This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing.  Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT  <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED <u>WITH </u>PREJUDICE.